CV 13 - 1165

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK   JOHNSON
### CASE NO.:

---

MARIE C. BOCO,

        Plaintiff,

v.

ARGENT MORTGAGE COMPANY, LLC,
SELECT PORTFOLIO SERVICING, INC., and
PARK PLACE SECURITIES, INC. 2005-
WCW1,

        Defendants.

**COMPLAINT** POLLAK, M.J

**JURY TRIAL DEMANDED**

---

## COMPLAINT

Plaintiff, Marie C. Boco (hereinafter known as "Plaintiff"), by and through her attorney,

Abel L. Pierre, Esq., for her complaint against Defendants hereby alleges as follows:

## JURISDICTION AND VENUE

1.      This court is vested with jurisdiction over these claims pursuant to 28 U.S.C. §

1332 based upon diversity jurisdiction.

2.      This court is vested with the authority to grant the requested declaratory relief

pursuant to 28 U.S.C. §§ 2201 and 2201 and pursuant to Rule 57 of the Federal Rules of Civil

Procedure.

3.      Venue is proper pursuant to 28 U.S.C. §1391 in the Southern District of New

York because Plaintiff resides in the district.

## PARTIES

4.      The Plaintiff herein, Marie C. Boco, (hereinafter, "Defendant" or "Ms. Boco") is

an individual who currently resides in the State of New York.

5.      Upon information and belief, the Defendant herein Argent Mortgage Company, LLC (hereinafter, "Argent") at all times relevant, is a foreign business entity was authorized to conduct business within the State of New York.

6.      Upon information and belief, the Defendant herein Select Portfolio Servicing, Inc. (hereinafter, "SPS") is a foreign business corporation with a registered agent and principal executive office in the State of Utah.

7.      Upon information and belief, the Defendant herein Park Place Securities, Inc. 2005-WCW1 (hereinafter, "PPSI") is a foreign business entity authorized to conduct business within the State of New York.

8.      Upon information and belief, Argent was a subprime lender that originated, processed, services and purchased residential loans.

9.      Upon information and belief, on or about August 31, 2008, Citigroup completed its acquisition of Argent Mortgage Company LLC's wholesale origination-lending unit, Argent Mortgage, its loan-servicing unit, AMC Mortgage Services, and shut down its retail-lending unit, Ameriquest Mortgage.

10.     Upon information and belief, Argent, at present time is known as Citi Bank Residential Lending, Inc.

11.     Upon information and belief, SPS is the current servicer of Plaintiff's home loan.

12.     Upon information and belief, PPSI is not the originator of the mortgage, the servicer, or even a bank. Instead, this entity is a New York common law trust created by an agreement known as a Pooling and Service Agreement (PSA).

## FACTS COMMON TO ALL ALLEGATIONS

13.     On or about March 23, 2005, Plaintiff obtained a first mortgage ("First Mortgage") in the amount of three hundred twelve thousand dollars ($312,000.00) with Argent Mortgage Company, LLC for the real property located at 137-07 256th Street, Rosedale, New York 11422.

14.     On or about March 23, 2005, the same day that Plaintiff obtained the mortgage, Argent effectuated an assignment of mortgage, an assignment of mortgage that was defective from the outset *(Please see attached as exhibit A, a copy of the assignment of mortgage)*.

15.     Firstly, the purported assignment of mortgage was executed by Mr. Jose Burgos as Agent. Mr. Burgos is a known robo-signer. Nowhere on the assignment was it acknowledged what entity Mr. Burgos was an agent of and what authority did he held to sign the assignment. Mr. Burgos had no authority to contract on behalf of any entity. Robo-signing documents, especially assignments of mortgage, without any question, falsify the chain of title for underlying properties. Consequently, the purported March 23, 2005 assignment is fraudulent, falsifies and severs any claim to title to Plaintiff's real property.

16.     Secondly, the alleged assignment of mortgage appears to assign title to Plaintiff's real property in blank to no particular party. An assignment of mortgage indicates that a mortgage has been transferred from an original lender to another party. This particular March 23, 2005 assignment, on its face, shows that the mortgage was transferred from Argent to no entity or individual. Consequently, this assignment of mortgage cannot exist because it doesn't assign the mortgage to any particular entity or individual.

17.     In 2012, the Plaintiff served Qualified Written Request ("QWR") pursuant to the Real Estate Settlement Procedures Act, codified as Title 12 § 2605 (e)(1)(B) (e) and Reg. X §

3500.21(f)2 of the United States Code on Plaintiff's loan servicer at that time, Bank of America Home Loans. Pursuant to RESPA, loan servicers are obligated to provide copies of original promissory note, mortgages and other loan origination documentation requested via QWR.

18.     In response to the QWR, Plaintiff received correspondence from Bank of America Home Loans, which included a copy of the Plaintiff's first mortgage note. The copy of the note has no endorsements whatsoever on its signature page *(Please see attached as exhibit B a copy of the note).* Under the Uniform Commercial Code, a note is a negotiable instrument, freely transferable by endorsement to a specific entity or by physical delivery of the note endorsed in "blank" to a new party, who becomes the "holder" of the note. No endorsements clearly means that Plaintiff's original note was not transferred properly and by the book.

19.     Also received by Plaintiff, pursuant to her QWR, was an internal document transmittal checklist from Argent Mortgage Company, LLC to Bankers Trust Company of California National Association. Representing Argent on this document is Hasiyna Aluns. This checklist indicated that both the note and the assignment of mortgage were endorsed in blank. The Argent Mortgage Company party identified on the document is. In reality, the note has no endorsements whatsoever, the assignment is in blank, but assigning the mortgage to no entity or individual. Additionally, the Assignment was notarized by Hasiyna Aluns, the same party that represented Argent on this checklist. This clearly created a conflict of interest.

20.     Furthermore, there are indications of predatory lending on the part of Argent. Included in the documents supplied to Plaintiff via her QWR were two versions of Plaintiff's Uniform Residential Loan Application. Both versions of the loan application state different gross monthly incomes for the Plaintiff. This clearly evidences that Plaintiff's stated income was being manipulated to conform to a specific loan product, rather than being accurately reported.

21.    It is apparent that no party can assert beneficial ownership of Plaintiff's loan. First off, the assignment is in blank and conveys title no entity or individual. Moreover, since Argent was acquired by Citigroup, the original wet ink note must be endorsed and assigned to Citigroup and/or any subsequent assignee. To date, there is no record of such an assignment.

22.    Also evident is the reality that an original wet inked note fully endorsed is nowhere in existence. Argent's failure to transfer the original, wet inked note in connection with a legitimate assignment destroys the legitimacy of the endorsement and renders the assignment ineffective. In order to have a valid assignment, not only the mortgage, but the fully endorsed, wet inked note must also be transferred.

23.    On or about August 28, 2012, Plaintiff received notification from Bank of America Home Loans indicating that it would no longer be the servicer of Plaintiff's home mortgage loan. The notification identified Select Portfolio Servicing, Inc. as the new servicer of Plaintiff's home mortgage loan, effective September 26, 2012.

24.    On or about September 24, 2012, Plaintiff received notification from SPS, notifying her that, effective September 16, 2012, it would be the servicer of Plaintiff's home loan and it would be collecting the debt on behalf of Park Place Securities, Inc. 2005-WCW1.

25.    Upon information and belief, in order to collect payments on notes and mortgages it did not rightly hold, PPSI in concert with SPS has engaged in a fraudulent scheme.

26.    Plaintiff relied on these fraudulent misrepresentations by making payments on the mortgages and notes.

27.    If any party in possession of the fully endorsed wet ink note demanded payment from Plaintiff, she would be liable to the party in possession despite the fact that she has made payments to her current loan servicer under the mortgage and note.

## AS AND FOR A FIRST CAUSE OF ACTION FOR FRAUD

28.     Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 27 hereof with the same force and effect as though fully set forth herein.

29.     Defendants through the fraudulent scheme outlined in the paragraphs above made materially false representations and materially false omissions, namely, Defendant Argent created a fraudulent assignment which purported to assign obligations in the form of a mortgage and/or note.

30.     Argent perpetrated this fraud by knowingly and willingly creating a fraudulent assignment so that it would appear that any party had authority to collect mortgage payments, authority to accelerate a note, and authority to foreclose on a mortgage.

31.     Additionally, since PPSI is claiming ownership of Plaintiff's loan, the original wet ink note must be endorsed and assigned to PPSI.  To date, there is no record of such an assignment. Consequently, PPSI cannot claim ownership of the wet ink note.

32.     SPS, as servicer for Plaintiff's loan, asserts its right to collect payments from Plaintiff on behalf of PPSI.

33.     Plaintiff detrimentally relied on these false representations by making mortgage and/or note payments to an entity who she mistakenly believed to be legitimate holder of the mortgage and/or note.

34.     Plaintiff has been damaged in that she has made payments to an entity that has no standing to collect on either the mortgage or note.

35.     As such, Plaintiff has been damaged in excess of $312,000.00, with interest thereon, in an exact amount to be determined at trial.

36.     Defendants' actions were willful, wanton and without any justification or excuse.

37. By reason thereof, Plaintiff is entitled to punitive damages in the amount of $1,000,000.00.

## AS AND FOR A SECOND CAUSE OF ACTION FOR UNJUST ENRICHMENT

38. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 37 hereof with the same force and effect as though fully set forth herein.

39. By reasons of Defendants' unlawful receipt of payments made by Plaintiff, Defendants have been unjustly enriched as it was never entitled to receive payments under the mortgage and underlying note.

40. Argent has been enriched in that it still exists as a legitimate company, even though it was acquired by Citigroup and it has never legitimately assigned the note and mortgage to any entity.

41. PPSI has been enriched in that it claims to be the current owner of Plaintiff's loan and asserts its rights to collect payments.

42. SPS has been enriched as it represents itself as Plaintiff's loan servicer and sends monthly requests for payment from Plaintiff.

43. The Plaintiff has suffered irreparable economic harm, injury and damages. Namely, payments under the mortgage and note never went to the rightful entity (if any exists).

44. By reason of the foregoing, Plaintiff is entitled to a judgment against each and every Defendant for unjust enrichment in an amount to be determined at trial.

45. By reason of the foregoing, Plaintiff is entitled to a refund of all monies paid plus statutory interest from March 23, 2005.

## AS AND FOR A THIRD CAUSE OF ACTION FOR A DECLARATORY JUDGMENT

46.     Plaintiff repeats and reiterate each and every allegation contained in paragraphs 1 through 45 hereof with the same force and effect as though fully set forth herein.

47.     An actual, present and justiciable controversy has arisen between the parties concerning Defendants' right to enforce the mortgage and note at issue.

48.     Plaintiff seeks a declaratory judgment declaring the purported assignment void and quieting clear title to the property described in the mortgages and declaring that the subject property is free from all liens and encumbrances.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION

49.     Plaintiff repeats and reiterate each and every allegation contained in paragraphs 1 through 48 hereof with the same force and effect as though fully set forth herein.

50.     Argent had a duty to disclose to Plaintiff that the assignment of mortgage was invalid and quite frankly, does not exist.

51.     Defendant PPSI had a duty to disclose to Plaintiff that it is not in possession of a valid assignment of mortgage and consequently cannot collect payments.

52.     Defendant SPS had a duty to disclose to Plaintiff that PPSI cannot assert ownership of Plaintiff's loan without a legal binding assignment of mortgage.

53.     Plaintiff has been making monthly mortgage payments to the Defendants, but Defendants are not entitled to collect those mortgage payments.  Defendants certainly had an obligation to inform Plaintiff as to any improprieties and/or irregularities that would call into question the Defendants' entitlement to payment.

54.     The Plaintiff relied on the Defendants' acceptance of mortgage payments each month, and it was reasonable to rely on Defendants' misrepresentation as to entitlement to payment since she had no other facts at their disposal to indicate anything to the contrary.

55.     Plaintiff and Defendants do have a special relationship by virtue of the payments made monthly to Defendants by Plaintiff.

56.     By reason of the foregoing, Plaintiff is entitled to a judgment against each and every Defendant for negligent misrepresentation in an amount to be determined at trial.

57.     By reason of the foregoing, Plaintiff is entitled to a refund of all monies paid plus statutory interest from March 23, 2005.

## AS AND FOR A FIFTH CAUSE OF ACTION FOR DEFENDANT'S VIOLATION OF REGULATION Z

58.     Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 57 hereof with the same force and effect as though fully set forth herein.

59.     Section 6500, Part 226 of the Truth in Lending Act covers consumer protection and is known as Regulation Z.  Subpart E, Section 226.39 of Regulation Z governs mortgage transfer disclosures and requires that any person becoming the owner of an existing mortgage by acquiring title to the debt obligation by assignment, purchase or other transfer, provide the disclosures required by that section on or before the thirtieth (30th) day after the date of transfer.

60.     In addition, the disclosures must state where transfer of ownership of the debt is or may be recorded in the public records or, alternatively, that the transfer of ownership has not been recorded in the public records at the time the disclosure is provided.

61.     The above disclosures were not provided to the Plaintiff.  Plaintiff was not made aware of any transfer of ownership to any entity or individual, or where or whether the transfer documents had been recorded.  Plaintiff, to date, are still not aware of how, when or if a transfer

of ownership to any entity or individual was made or where or if the transfer was ever recorded in the public records. This is very clearly a violation of Regulation Z.

62. By reason of the foregoing, Plaintiff is entitled to a judgment against each and every Defendant for negligent misrepresentation in an amount to be determined at trial.

63. By reason of the foregoing, Plaintiff is entitled to a refund of all monies paid plus statutory interest from March 23, 2005.

WHEREFORE, Plaintiff respectfully requests a judgment and an award of relief as follows:

a. On the first cause of action, damages in excess of $312,000.00, with interest thereon, in an exact amount to be determined at trial, plus punitive damages of $1,000,000.00;

b. On the second cause of action, damages in excess of $312,000.00, with interest thereon, in an exact amount to be determined at trial, plus punitive damages of $1,000,000.00;

c. On the third cause of action, declaratory judgment against each and every Defendant;

d. On the fourth cause of action, damages in excess of $312,000.00, with interest thereon, in an exact amount to be determined at trial, plus punitive damages of $1,000,000.00;

e. On the fifth cause of action, damages in excess of $312,000.00, with interest thereon, in an exact amount to be determined at trial, plus punitive damages of $1,000,000.00;

f. Attorneys' fees, costs and disbursements of this action; and

g. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff, Marie C. Boco demands a trial by jury.

Dated: New York, New York
February 27, 2013

ABEL L. PIERRE, ESQ
Law Office of Abel L. Pierre, P.C.
*Attorney for Plaintiff*
40 Exchange Place, Suite 2010
New York, NY 10005
Tel: (212) 766-3323
Fax: (212) 766-3322

**Exhibit A**

CRPRDNRBS41a          7/26/2012 10:34:20 AM  PAGE  29/063      888-294-5658

When Recorded mail to:
Argent Mortgage Company, LLC
P.O. Box 14130,
Orange, CA 92863-1530

Loan Number:  0075925792 - 9604

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENT, That Argent Mortgage Company, LLC, Mortgagee under that
certain MORTGAGE executed by

MARIE C. BOCO  As Mortgagor(s)

On the 23rd day of  March  , 2005 , and recorded on the
day of      ,   , in Book          of public records at Page
under filing No.          of the Records of  QUEENS  County, State of New York
given to secure the payment of a promissory note for the sum of
three hundred twelve thousand and 00/100     Dollars ($  312,000.00   ).
and interest, has endorsed said note and does hereby ASSIGN AND TRANSFER to

All right, title and interest in said note and all rights accrued under said Mortgage and all indebtedness
thereby. The said Mortgage described herein affects the premises commonly known and designated as:
                "LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF"

Section
Block
Lot

This assignment is not subject to the requirements of Section 275 of the Real Property Law
because it is an assignment within the secondary mortgage market.

IN WITNESS WHEREOF said   Argent Mortgage Company, LLC
Has caused this instrument to be signed by its Agents and attested by its corporate seal this 03/28/2005.

Argent Mortgage Company, LLC

By:
    Jose Burgos , Agent
ATTEST:

State of  New York

County of  Westchester

On  03/28/2005     before me,  Haslyna D. Aluns,
personally appeared   Jose Burgos

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s) or the entity upon behalf of which is the person(s) acted, executed the Assignment.

        Haslyna D. Aluns
    Notary Public State of New York
          No.
    Qualified in Westchester County
    Commission Exp. Nov. 23, 05

                            WITNESS MY HAND AND NOTARIAL SEAL

                            Haslyna D. Aluns

Prepared By:  Argent Mortgage Company, LLC
              1100 Town and Country Road, Suite 200,
              Orange, CA 92868

730-NY-2 (Rev 03/04)

BANK

**Exhibit B**

  Loan No. 0075925792 - 9804

# FIXED RATE NOTE

## THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.

March 23, 2005                    White Plains                         NY
[Date]                              [City]                            [State]

137-07 255TH STREET, ROSEDALE, NY 11422
[Property Address]

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $  312,000.00  (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is    Argent Mortgage Company, LLC .
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  6.000 %.

The interest rate required by this Section 2 is the rate I will pay before and after any default described in Section 6(B) of this Note.

### 3.  PAYMENTS

(A)   Time and Place of Payments

I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on    May 1, 2005.
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on       April 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at:   505 City Parkway West, Suite 100,  Orange, CA 92868

or at a different place if required by the Note Holder.

(B)   Amount of Monthly Payments

My monthly payments will be in the amount of U.S. $2,235.27.

### 4.  BORROWER'S RIGHT TO PREPAY

I may repay this Note at any time as provided for in this paragraph. If within the  first   1 year(s) from the date of execution of the Mortgage, Deed of Trust or Security Deed which secures this Note, I prepay in any 12 month period an amount exceeding 20% of the original principal balance under this Note, I will pay a prepayment charge to the Note Holder equal to six (6) months advance interest on the amount prepaid in excess of 20% of the original principal balance under this Note.

### 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

### 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

(A)   Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   fifteen   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  2.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B)   Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)   Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

Initials: HCB

1 of 2

231-INY (Rev. 10/00)                                                              03/23/2005 2:59:39 PM

BANK


**(D) No Waiver by Note Holder**

 Loan No. 0075925732 - 8604

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE.**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

*AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED*
*Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender may also require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument.*

*If Lender requires immediate payment in full under this Paragraph, Lender will give me a notice which states this requirement. This notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.*

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
Borrower: MARIE C. BOCO
SSN: 103 70 5060

_____ (Seal)
Borrower:
SSN:

_____ (Seal)
Borrower:
SSN:

_____ (Seal)
Borrower:
SSN:

2 of 2

220-DIY (Rev. 10/95)

03/23/2005 2:59:38 PM


BANK